We'll hear counsel in Ogbin v. Fein. Lewis Adler on behalf of the appellants with Roger Mattson, my associate in the matter. Your Honor, I'd like to reserve two minutes for rebuttal. That's granted. That seems to be the New Jersey pattern. I'm going to follow everybody else in that regard. Your Honor, the issue before the court really, I think, is, first of all, it's an issue of first impression in this circuit. So the cases, as I've heard before from other circuits, are not binding upon this circuit. And that's very important to consider in the arguments here today. What we're concerned with is the Fair Debt Collection Practices Act. And more specifically, two issues in its application here before the district court was, first of all, if the communication that's in violation is sent between attorneys, that communication is clearly in violation of the act. But yet, because it went to the debtor's attorney, it is immune. The second issue deals with the litigation privilege as a defense under the act. Well, it's the first issue and the act which gave the district court federal jurisdiction. Jurisdiction was invoked on the federal question because of that first claim. I don't understand, really, why this case became so complicated with the litigation privilege. Because if Judge Kavanaugh had decided the first issue, whether or not attorney-to-attorney communications are covered by the act, and if he reached the same conclusion, he could have decided not to exercise his discretion and exercise supplemental jurisdiction over the state claims. And you wouldn't even get to the litigation privilege. Correct, Your Honor. In fact, that's the issue that the companion case of Allen, which is scheduled for argument in the fall, it's the same issue concerning communications between attorneys. I have to say that, in my mind, and frankly, Syed takes the same conclusion, the Supreme Court in Hines already answered that question quite succinctly. I mean, the facts of the case are almost identical to the facts here. We have a case that's in litigation. We have a letter sent to the debtor's attorney proposing settlement terms which are not enforceable under the law. The Hines court specifically said that litigating attorneys, litigating attorneys are subject to the Fair Debt Collection Practices Act. This is not that kind of a case. This is not that case. It's exactly that case, Your Honor. There was a foreclosure in place. We were asking for the amount to pay off in that foreclosure in order to either reinstate the loan or satisfy it. And what they gave us was a payoff amount that included amounts that they were, under New Jersey law, not allowed to collect in violation of 1692F, specifically says debt collectors are not allowed to collect any amount, including interest, fee charge, or expense incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by law. The statute does not say unless the debtor is represented by an attorney. I mean, there is no such, this whole idea that this act somehow has this magic loophole when there is an attorney representing a debtor, this act was designed by Congress, the Fair Debt Collection Practices Act was designed by Congress as a nationwide minimum regulation and standard upon debt collectors. It regulates their practices. It's specifically directed to them. Wait a minute, doesn't the act protect consumers as consumers? What part of the legislative history, the legislative history, supports the conclusion that Congress intended to apply the act to communications to a debtor's lawyer? Well, let's go the other way. There's nothing in there that says... Why don't you answer my question? I am. There is nothing in there that says that lawyers, that communications to another lawyer are exempt. And in fact, the legislative history, and Syed goes into that, says exactly the opposite result. It says that the purpose was also to provide... Of course, Syed, you realize is in the real minority of those courts that have considered this issue. Well, just because somebody's in the minority doesn't mean they're wrong. I've been there many a time. There's been a few other little problems with Syed. But why don't you answer my question? I mean, the act only is meant designed to protect consumers as consumers, correct? No. No. And that's right in 1692E, purpose. It is the purpose of the subject or to eliminate abusive debt collection practices by debt collectors to ensure that those debt collectors who refrain from using and to promote consistent state action to protect consumers against debt collection abuse. You got it. To protect consumers against... But Your Honor, that is the third prong. The second prong that they talk about is making an even playing field for all debt collectors. The purpose is so that the abusive debt collectors are not able to have some type of competitive advantage over the ones that play by the rules. It's not just to protect consumers. It's a regulation of the field. The consumers also are protected. There's no question. And there's also no question that, generally speaking, the person that's going to be taking the private enforcement action on this act is going to be a consumer. But that does not deny the fact that the act specifically provides for a leveling of the playing field in this area of commerce. So you think the act was designed to protect debt collectors? Is that against... It's ethical debt collectors. Absolutely. And the act says that. I don't have to... Congress would be amazed. I don't think so because... You're saying there are three purposes. The first purpose is to punish the debt collectors who are engaged in unfair practices. The second purpose is to...  And then the third thing mentioned is to protect consumers. Correct. You're asking us to slice that into three rather than look at it... Correct. You have to look at all three purposes. Stop the abuse of practices, level the playing field for those that play ethically, and third, protect consumers from those actions. You're essentially saying lawyers will not be able to communicate with lawyers. No. The act provides for communication between lawyers. That's allowed. What it says is when you're a debt collector... How? If there's a mistake in one of those two letters. You mean if there was a bona fide mistake? Well, that was addressed just in April by the Supreme Court. A bona fide mistake. Isn't that inherently inconsistent, a bona fide mistake? Well, no. Again, the Supreme Court... A mistake is a mistake as opposed to an intentional intent to mislead. Well, the act, I'm sorry, the act is 1692KC,  German v. Carlisle, which deals exactly with that issue. It talks about the fact, for example, if an attorney has a misunderstanding of the law of the Fair Debt Collection Practices Act, that is no defense. You have to not only have a bona fide, if you make a bona fide error, you also have to have procedures in place to catch those errors. That's what the statute provides for. So it's not enough that they just made an error. They have to show that they had procedures. If they don't have procedures, it's not a defense. It's a strict liability statute. What about an honest mistake? A lawyer sends a demand letter saying, you know, you didn't, you breached the contract, and my client's entitled to 5% interest under the contract, and it's a typo, and it was actually, you know, 3%. That lawyer's going to be... KC does deal with that. It talks about typographical errors and things like that. But, again, it calls for... It's not even just a typo. It's, you know, gee, I've done a lot of work for this client, and they always used to have 5% interest, and now it's 3%. Well, in that regard, he may... If he didn't have procedures in place to catch those errors, then, unfortunately, pursuant to the terms of the Act, and, again, Jarman makes it quite clear, he's liable. All right. But even if we go your way and follow the Fourth and the Seventh Circuit and disagree with the Ninth Circuit, you could still lose this case on appeal, could you not, if we impose the reasonable attorney standard? In other words, why should we not put the attorney who's receiving the communication on a different footing than the consumer who would receive the communication directly from the debt collector? Well, I think then you have to look at what the violation is under the Act. In this circumstance, we're talking about the specific prohibition against collecting something that's prohibited by law. This is in the situation which was like in Girero out of the Ninth Circuit, where they were trying to determine whether you would think a letter signed by a law clerk is a lawyer. That, a reasonable attorney would be saying, no, I know that that's not the case. But when you have an actual misrepresentation of what they're entitled to collect or fraudulent statement, it doesn't matter because the Act is looking at the behavior of the collector.  Well, that's correct. But that's, again, the statute focuses on stopping the behavior of the debt collector in that regard. For example, what you're saying is if we had the most outrageous lie in there, that you owe me a million dollars, well, any attorney should say, well, I know that that's an outrageous lie, that can't possibly be true. The Act is talking about the fact that those are prohibitions. It doesn't matter that the fact that someone might catch you at it. It's the fact that it is a prohibited action, and the statute doesn't give you any wiggle room. So a lawyer can communicate with the debtor's lawyer at his or her peril, really. This will, I think, chill debt collection. Well, again, Your Honor, at a look. Is that what Congress intended? It will chill. Does Congress intend that this statute would inhibit talking to lawyer? No, and, in fact, the statute provides that lawyer-to-lawyer communications are required when the debtor tells you that I'm represented by an attorney. What it will prohibit is debt collectors making false statements to the debtor's attorney. By having a lawyer, the debtors know better off than if it didn't. A lawyer will know how to find the truth on their behalf, but that is not the same as saying that the creditor's attorney, the debt collector, has an obligation under the law not to be untruthful and to collect amounts that are allowed by the contract or the law. And I would say Justice Sotomayor, in her majority opinion in German, addressed that exact issue and said, that's the consequence of Congress's result. That's exactly the holding of the court when they talked about, are those defenses available. It sounds like you're okay with us establishing in this circuit the competent  The competent attorney standard is not the standard. Other courts have so held. Why should we not follow suit? You just, I think, made a case for why communications from lawyer-to-lawyer are qualitatively different than communications from lawyer-to-consumer. Yes, but again, the Act is not making that distinction. The Act is prohibiting specific conduct by the debt collector. That's why when we start putting these standards, it says, for example, the reasonable attorney, it doesn't, when the Act says that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt, that's not, it's focused on who's getting the letter. It's focused on who's sending it. I'm suggesting to you that it's a judicial gloss. As I understand it, the standard right now is the least sophisticated consumer standard. Isn't that right? That is correct. Where in the statute does it require that courts adopt the least sophisticated consumer standard? It does not. All right, now hold on. Now let me move to my next question. Thank you for answering that question. If you've conceded that the least sophisticated consumer standard is not required by statute, and that is undoubtedly a pro plaintiff standard, on what grounds can you say that a court such as this one cannot adopt in a competent attorney standard, even though that's not specifically referenced? Again, because when you look at the least, when the consumer standard focuses on practices that occur primarily under 1692E, which are false misleading representations, where you talk about, for example, you get the letter that looks like it's from an attorney, or you get the language that's not clear, that's where the least sophisticated debtor standard is being applied. We're focused on 1692F, which talks about standards of things that they're not specifically supposed to do, including the collection of an amount that is not permitted by the debt or by the law. These are express restrictions. Your time has been up. Thank you. Good morning. May it please the Court, my name is Andrew Sales. I'm with the law firm. Whoa, whoa, whoa, whoa. I can't hear you. I don't know about my colleagues. Your name is? Andrew Sales. I'm with the law firm. Mr. Sales. Of Connell Foley on behalf of the appellees, find such kind. Okay, good. Once again, please talk as clearly as possible. Certainly. I'll try my best. We request today that the Court affirm the district court's decision below to deny the appellant's complaint in its entirety. As the Court knows, the district court denied the complaint based on the FDCPA. No, it's not. Is there an issue?  We just can't understand what you're saying. The acoustics are tough. That's better. Maybe I might be standing too close. Okay. As the Court knows, the district court concluded that the FDCPA was not applicable to communications among attorneys. And in this context, I believe the circumstances bear that out. Well, now, that was, in my view, the first question and only question he would have needed to answer, given his disposition on that question. And, in fact, with our discussions with your adversary, we never even got into litigation privilege. No. So. I'm happy to address the litigation privilege argument. No, no, I don't. I'm not looking for it. I'm just simply saying. But it's part of this case. It could be part of this case. In that regard, I believe the district court was correct in dismissing this matter under litigation privilege. What we have is a fundamental fact to recall is that this matter arose from a communication that was issued solely at the request of the debtor's foreclosure act when it was filed. A unilateral request was issued to the fine such law firm for this information, and a follow-up request was issued. It was issued in response directly to the debtor's counsel and was subsequently used to form the basis of this lawsuit. If you apply New Jersey's litigation privilege, four elements squarely apply, and to apply it does not render the FDCPA inapplicable. In fact, I believe it's in accordance with the purpose of the FDCPA, which is to, on one hand, protect against abusive debt collection practices, but on the other hand, to also ensure that those attorneys that act in accordance with the law are not competitively disadvantaged in this matter. And what we have here is a district court ruling, and looking over the facts below, and this communication that was issued in furtherance of resolving a foreclosure action, in good faith, I should note. And it's also important to note that the letters themselves stated that they were estimates. Subject to verification, they were issued in good faith among counsel, and for the effort of resolving. But that argument goes to the merits. That doesn't shed any light on whether attorney-to-attorney communications are covered under the plain language of the Act. And Hines seems to say that they are. Well, the Hines case dealt with the issue of whether an attorney could be subject to the FDCPA. It was not presented with the issue of whether a communication among attorneys was actionable. Granted, the underlying facts for that, but as noted by the court in Guerrero and several other circuit courts, that's an interpretation that's been unduly read into Hines by the SIAC court. So you are arguing that attorney-to-attorney communications are not covered by the Act? They're not actionable under the FDCPA. That's correct. And that conforms with the interpretation and purpose of the FDCPA. Remember, at its fundamental basis, the Act was enacted to protect consumers who were, you know, perceived to not be able to otherwise protect themselves. Wasn't it also to bring down the hammer on ethical debt collection? That's correct. It acknowledged that there were unethical practices in the debt collection field. And it also noted that consumers were often not in a position to know what their rights were. So it enacted these provisions to protect consumers. It was a consumer protection statute to enforce against the debt-collecting attorneys. It did not embody scenarios where a consumer went out and obtained their own protection, i.e., through a counsel. As noted by the Guerrero court and the Second Circuit and every district court that's addressed this issue within the Third Circuit, the purpose behind the FDCPA is consistent with holding that communications among attorneys are not actionable because it defeats the need for protections to the consumer. But how do you deal with the fact that there was an attorney exemption that was repealed in, I think, 86? There was a repeal to the attorney. But that, again, dealt with attorneys themselves being subject to the FDCPA. I'll admit to the Court that the FDCPA does apply to attorneys. It's just the further issue beyond this is whether communications among attorneys was actionable. And that was never a specific exception to the FDCPA. But wouldn't we expect to see something in the statute that says, you know, this statute does not apply to fraudulent or it wouldn't say this, but the statute could say that this does not apply to communications from debt collectors to attorneys. The statute's a broad statute. But if you look at the definitions, for example, in defining a consumer, it lists a number of fiduciaries and beneficiaries, but specifically does not include attorneys among that group. And that was noted by the Court's decision in Guerrero from the Ninth Circuit. Well, but it doesn't include employers either. If an unscrupulous debt collector sends the debtor's boss dunning letters, that's actionable under this statute, is it not? Correct. And I didn't see the word employers in the statute under that group of fiduciaries that you just mentioned. But that would fall into the prohibition against disclosing information regarding a debtor's obligations to undesignated persons. An employer reasonably would not be a fiduciary or beneficiary of a creditor or, I'm sorry, a debtor. But by the same token, applying that to a debtor's attorney is a completely different scenario. We have an agent, someone who's stepping in to advocate on the interests of the debtor. An employer of a debtor presumably would not be representing that debtor in connection with the debt. But then there's a safe zone where unscrupulous debt collectors, as long as they barrage attorneys, then they're okay. They're immune. Well, it doesn't speak for the proposition that the FDCPA is not wholly inapplicable. But to the extent it's a communication among attorneys, yes, it's presumed that the attorney will step in and protect the interests of the client. And as the Court noted earlier, the least sophisticated consumer standard reflects that. The Court acknowledges that the recipient will have certain tendencies. And the fact that it acknowledges that a consumer will have a different set of propensities is consistent with acknowledging that a consumer represented by counsel no longer needs those protections. That counsel will step in and advocate on their behalf. Now, should we look for competent counsel? Or just counsel? Counsel. It's presumed that an attorney acting diligently in accordance with his license to practice would act knowledgeably and represent a client to the best of his degree. If we adopted a competent counsel standard, would you have a problem here, given that allegations of illegality or whatever have been alleged as to the two letters at issue? I believe applying a competent standard, a competent attorney standard, is unnecessary. I mean, would it have to go back to the district court for a hearing as to whether or not those letters were or were not bad? The Court conducted an analysis of those documents on its face, but I don't think a competent attorney standard is necessary here. I think it's going too far to reach a conservative middle ground. The Ninth Circuit expressed a clear opinion that's been accepted among the courts of our nation. Grand Sayed took a different approach, but that's the approach that's necessary here given the underlying purpose behind the FDCPA. We have a consumer protection statute that once an attorney steps in, assumes and takes over those responsibilities, and one would presume goes beyond the protections afforded under FDCPA to allow it to be actionable now when a third party steps in and you apply a different set of standards. Yes, it would provide some additional protections to a debt collector, but that's not consistent with the purpose of the FDCPA. But what if we do disagree with Guerrero? I mean, the Ninth Circuit, in a two-to-one opinion, went against you, and the Fourth and Seventh, I think in two unanimous opinions, went the other way. Guerrero goes your way, and the other two go the other way. What if we follow the majority, the Fourth and the Seventh? Would you not then advocate that we ought to affirm on the grounds of the competent attorney standard? Certainly the Seventh Circuit's adoption of the competent attorney standard acknowledges somewhat of the argument we're presenting, that there's a distinction between a consumer and a consumer represented by an attorney. And the Court in its discussion in the Seventh Circuit, which addressed four separate cases, you know, with different facts, did state that in its discussion. The Fourth Circuit discussion in Syed clearly is inapplicable. It applied an incorrect interpretation of Heinz's one that's been repeated by the courts. I should note that not just the Ninth Circuit has addressed this issue. Just across the river, the Second Circuit has indicated its adoption of the same position here, that communications among debtors. I think that was dicta. You're correct. They expressed their consensus. And I should note that this Court has, in a non-precedential decision, in the Schaffkrause case, questioned whether communications to debtors are actionable under the FDC. I wonder, how does one make a determination, then, and who makes it? What is the standard for a competent attorney? Is it missing a typo in a letter? Is it not picking up the right amount? I mean, I don't know how one can draw a line as to what is or is not competent. I think you're right. Reading that standard into the FDCPA creates those problems, Your Honor. The Seventh Circuit tried to discuss scenarios whereby a competent attorney may be misled. They discussed issues where an attorney would not be able to glean the misrepresentation, say a blatant misstatement of a principal balance or something along those lines. Well, if the unscrupulous debt collector sent to the lawyer a fraudulent document, right, then you couldn't expect the receiving lawyer to have sniffed that out. Yes. But on the other hand, if the debt collector sends a letter saying, your client owes me, well, it was my client, $11,800, you would expect the lawyer receiving it to look at the file and say, well, no, actually, we only owe you $10,800. Then that would not be the competent lawyer, and the debt collector would be protected under that scenario, right? Oh, yes, the competent attorney. But, again, it dances a difficult dance to create a line where what the competent attorney stops at and what it doesn't. Just as a consumer has a blatant misstatement. Because here this would be decided almost as a matter of federal jurisdiction. But if you get into the competent lawyer, the district court would have to somehow determine whether or not the lawyer-to-lawyer communications were the product of a competent attorney. So, you know, here I think one could say as a matter of federal jurisdiction. There is no jurisdiction over, you know, where all there is is an allegation of lawyer-to-lawyer communications under the Act. Well, to the extent there's a bright-line rule adopted that communications to a debtor's attorney are not actionable, we wouldn't have that problem. You're right. If we incorporate a competent attorney discussion. Yeah, then they're actionable. I mean, somebody's going to come in and say he wasn't competent. I mean, that's it. That's what's going to happen. And it deals with a greater, you know, concern. I mean, the FDCPA has a broad application, but it's also resulted in an industry of additional lawsuits such as this. This is an instance where the fine such law firm after filing a foreclosure complaint was ready to sit back. Respectfully, the communications here would not have been issued but for a request on behalf of the debtor. And as the Court mentioned earlier, this could result in a chilling impact on the litigation activities. There's an underlying policy to settlement here and to preclude attorneys from taking steps in furtherance of settlement would undoubtedly result in additional value in the litigation system. I gather that you agree with the district court's position that the action should be dismissed because of the New Jersey litigation privilege? That's correct, Your Honor. Yes, and as touched on briefly, the four elements squarely apply here, and the application of litigation privilege would not be inconsistent with the FDCPA. What about the supremacy clause? The supremacy clause applies where the application of the state law would render a federal law inapplicable or obstruct its purpose. And here that's not the case. We have a litigation privilege. Well, that's not the case if we agree the federal law says what you say it means. But if we believe the federal law says what opposing counsel says it means, then you have a direct conflict. It still goes to a greater – it doesn't preclude the application of the FDCPA outright. Even if the court assumes that communications among attorneys are actionable, the New Jersey litigation privilege only applies in a limited context. It wouldn't result in a cross-the-board immunity in all communications issued by an attorney. It would only apply in the context of a litigation, such as here, after a foreclosure complaint was filed and a specific request was made. The circumstances here show that it wouldn't be all-encompassing, which is generally where the supremacy clause comes in. If the application of the state law would render a federal law inapplicable, the supremacy clause applies. But here the litigation privilege can be applied in narrow circumstances and still be consistent with the purpose of the FDCPA, which is to protect consumers and to ensure that attorneys acting within their rights are not competitive. But the Supreme Court in Hines said that lawyers acting in litigation collecting debts are covered by the FDCPA. I said attorneys are actually, yes, attorneys. And that's, so that's on one side. On the other side is the state of New Jersey saying we have a common law state privilege. I mean, they're in irreconcilable conflict, are they not? Yeah, the argument is much stronger assuming communications among attorneys are held inactionable under the FDCPA. But by the same token, the Hines issue dealt with just whether an attorney acting, an attorney acting on behalf of a creditor can be accountable under the FDCPA. And arguably, if you apply it in the circumstances here, I believe it's consistent with Hines. We have a definite set of facts in which a state law privilege exists that also is congruent in accordance with the purpose of the FDCPA. And I believe applying the two would not be inconsistent. Thank you. Thank you. Thank you. If I get to the litigation privilege, I guess, at this point. Well, it's your two minutes. Thank you. I would just point. Your two minutes work. I would point out that the, in SIAD, they actually did a survey concerning litigation privilege, and no circuit that has addressed the issue except for the 11th has accepted that litigation privilege preempts somehow as a defense to the Fair Debt Collection Act. Assuming those circuits, all of them have even dealt with it. That's correct. Of those that have dealt with it, they've all ruled that it does not apply. The second, the sixth, well, there is a mention even in this circuit in Piper that it did not apply. The seventh, the tenth, except for the eleventh. Talking about the competent attorney standard, which is I think something we need to consider is how would that be implemented. And I think that's why, if we look at the structure of the statute, the need for that is not necessary, because there are specific landmarks in the statute that provide behaviors you cannot do. And that's where I think the Court needs to focus. Look back at the statute itself, and it's talking about behaviors that are prohibited to be done. And it doesn't give any exemption and say you can't do it when there are these circumstances or those circumstances. And that's why I really want you to focus on 1692F as the best example, because, again, the example that we use and it applies in this case is that a debt collector may not use unfair or unconscionable means. It goes on to say, in violation of this section, the collection of any amount, including any interest, fee, charge, expense, incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law. It's an objective standard. We don't have to have an expert come in and say this attorney was competent. You have a clear standard that says you can't do this, and it's in the statute. This affects oral communications as well? Yes, it does. I mean, it just seems like you're asking us to reap the whirlwind here. If we go your way in this case, every lawyer who has any prudence in him or herself, when asked by opposing counsel, hey, you know, my client's had enough of you suing him or her. Let's settle this thing. How much do you want to settle the case? I mean, send me a letter. I need something from my client. The lawyer's always going to decline that invitation. It's going to be a litigation morass right to the very end, because any time the collecting lawyer gives a number, he or she does so at their peril. Well, at a peril if it's not pursuant to the law? Well, they're not perfect. People, in some percentage of cases, I think we can all stipulate, in some percentage of cases the number's going to be the wrong number. Sometimes it might be lower than it's supposed to be, and other times it's going to be higher. Well, again, if it's lower, then that's on issue. But if it's higher, that unsuspecting lawyer's going to get hammered for perfectly innocent behavior. No, because, again, the statute provides in K that if they have procedures in place to verify, to stop those type of things from happening, then there's no liability. Well, that has to be litigated, doesn't it, whether or not the procedures are complied with. Well, that would be the defense, obviously. But, again – Most lawyers are sole practitioners. What are the procedures they have in place? The assistant or the receptionist is going to review every demand letter before we send it out to make sure the lawyer wasn't off that day? Well, the perfect example, here we have a foreclosure firm. That's what they do. So what they should be quite aware of are the rules of court that provide for how much they're allowed to collect in attorney's fees and the statutes in the foreclosure action. They should be more expert. They are. And some days they're going to get it wrong innocently. I'm not talking about the unscrupulous one. I'm talking about the innocent one. And the innocent one, if they have procedures in place, they read the note, they double-check the law, they don't let the secretary just send it out without review it themselves. I think those are protections that are in place. But, again, the Supreme Court addressed that this April in Jarman, talking exactly about those chilling effects that you talk about, and they said that was up to Congress, and Congress has held that this is the standard to which we are holding everyone, including the litigating attorney. Thank you. Thank you.